THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

EZEKIEL H. PALMER.

1. ATTORNEY AT LAW—*misconduct in office.* This court is not constituted a censor of morals, so as to require it to pronounce upon the style of manners and conversation which becomes a member of the bar.

2. But this court has the power, under the statute, at discretion, to strike the name of any attorney or counselor at law from the roll, for malconduct in office.

3. The statute further makes it the duty of the court, whenever it shall be made to appear that any attorney has neglected, upon demand and tender of reasonable fees, to pay over or deliver money or property to his client, to direct that the name of such attorney shall be stricken from the roll of attorneys.

4. SAME—*at whose instance the name of an attorney may be stricken from the roll.* The statute which authorizes "any person interested" to apply for a rule upon an attorney who has failed to pay over money collected, to show cause why his name should not be stricken from the roll, should not receive the narrow construction, that the person who may make the application must be a creditor. The members of the profession, and other persons besides creditors, have a deep interest in the purity of those who sustain such important relations to the public.

This was a proceeding to strike the name of an attorney from the roll, for mal-conduct in office.

Mr. ROWELL, State's Attorney, and Messrs. KELLY, FULLER & MOORE, for the people.

Mr. T. LYLE DICKEY, for the respondent.

Per CURIAM: This is a motion to strike the name of the respondent from the roll of attorneys.

In a certain contingency, the discharge of the duty required is painful and disagreeable, but as it is imposed by the statute, we can not shrink from its performance.

Charges have been made and proofs submitted as to ungentlemanly conduct and language, on the part of the respondent, to and in the presence of the judge upon the circuit, and towards other members of the profession. However unbecoming such conduct and language may be, on the part of the true gentleman, we shall not animadvert upon them.

This court is not constituted a censor of morals, so as to require it to pronounce upon the style of manners and conversation which becomes an honorable member of the legal profession. This would be an unwarranted extension of its powers. The circuit and the inferior courts have ample authority to protect themselves, their officers and suitors, and members of the profession must guard themselves from insults of the character alleged.

There are, however, charges against the respondent which we can not pass by so slightly. A brief resume of the facts will be necessary.

The respondent, as an attorney at law, had entrusted to him, for collection, notes, secured partly by mortgages, of the amount of about $4000, by one McAboy. He kept possession of them for some five years, and paid some money to his client. There were occasional interviews between the parties, and several attempts at a settlement.

At one time McAboy was sick, and sent for Palmer. He then acknowledged that he was indebted to his client, and promised to bring his books and settle. McAboy not only desired the payment of the money due, but a return of the notes.

Another effort was made to arrange matters, when the parties were together, but Palmer suddenly terminated the

interview with the excuse that he must go to his farm, and remarked that they would settle at some subsequent time.

Two or three demands were made for a settlement, and after long delay and much trouble, the notes and mortgages were returned to McAboy, but no money was paid to him.

The fees due to the attorney had been paid before the money was demanded, but McAboy was forced into court, to obtain it. Upon the first trial, McAboy recovered against the respondent $235. By agreement of the parties, a second trial was had, and resulted in a judgment in favor of McAboy for $870, which was affirmed in this court. Though there might be an honest difference as to the indebtedness to McAboy, other moneys were collected about which the same difference could not exist.

The respondent, as attorney, also received, in 1863, from one Forhner, of Missouri, notes for collection. He collected some money and retained the notes until in 1871, when they were demanded by Moose & Warner, attorneys, by authority of Forhner. They exhibited a letter from Forhner, directing a surrender of the notes to them, and also the payment of any money in his hands. Palmer acknowledged that he had the notes, as well as a balance of money, after the payment of all fees, but declined to give up the notes or pay over the money, as he did not know that the signature to the letter was the genuine signature of Forhner, and requested Warner, the member of the firm who had made the demand, to call again.

At the second interview, he agreed to pay over the money and surrender the notes, and Warner wrote and offered to him a receipt for the money admitted to be due, and the notes which Palmer proposed to give up. After reading the receipt, he refused to carry out his own proposal, and insisted upon a receipt in full of all demands. Warner declined to give such an one, and the interview ended, and suit had to be instituted against the respondent.

Palmer also, in 1868, collected, for one Richards, $123. Several demands were made for the money, but he retained

17—61ST ILL.

and used it for nearly two years, and was finally sued, and then acknowledged the indebtedness and paid it.

The excuse set up for this last transaction, by the respondent, is, that in 1868 he purchased a draft on Chicago, from the bank of John Warner & Co., payable to himself, for $110, indorsed the same to Richards, and transmitted it to him by mail. He, however, admits that Richards did not receive the draft, and asserts, in his sworn statement, that he applied to the bank where he had purchased the draft; that the officers of the bank investigated the matter and ascertained that the draft had not been presented to the bank in Chicago on which it was drawn, and refunded to him the money.

John and James R. Warner, who compose the banking firm of Warner & Co., most positively deny this statement, and aver that, during the years of 1868 and 1869, Palmer purchased of them only one draft for $110, and this was drawn on a bank in Chicago, payable to Palmer, and indorsed by him to John Warrenburg, and was paid and returned to them in the due course of business. They further state that Palmer never applied to them to refund the amount of this draft, or of any lost or unpaid draft, and that no drafts can be drawn by the firm, but by one of them.

The evidence is conclusive, that the respondent has collected money for his clients, and has refused and neglected, after demand, to pay it to them; that he has hindered and annoyed them in the adjustment of business entrusted to him, and compelled them into litigation to obtain their property and rights.

The doubt expressed as to the genuineness of Forhner's signature was the merest subterfuge, for he was willing to act upon it afterwards, without further proof. The persistence in urging the writing of a receipt in full of all demands was unreasonable, and a designed avoidance of any adjustment. Palmer must have known that a receipt for the notes surrendered and the money paid, was all that he could expect.

Indeed, it is unnecessary to comment upon the evidence. There is no justification for the conduct of the respondent to

McAboy, and Forhner and Richards. He was trusted by them, and was bound, by the relation of confidence thus created, to act for and towards them with good faith, strict integrity and the highest honor. He should have been prompt in the collection and the payment of the moneys. On the contrary, he postponed the just claims of his clients, evaded their demands, and forced them to expense and litigation.

The statute provides that this court, at discretion, shall have power to strike the name of any attorney or counselor at law from the roll, for mal-conduct in office. It further makes it the duty of the court, whenever it shall be made to appear that any attorney has neglected, upon demand and tender of reasonable fees, to pay over or deliver money or property to his client, to direct that the name of such attorney shall be stricken from the roll of attorneys of this court.

Without the latter provision, the facts proved show that character of mal-conduct, where the relation was so confidential, as to require the exercise of the discretion given by the statute.

The section of the statute in relation to the failure of an attorney to pay over money collected, provides that, if an attorney shall refuse or neglect, after demand and tender of reasonable fees, to pay over or deliver any money or property in his hands, to his client, "or to any person authorized to receive the same, it shall be lawful for *any person interested*" to apply to this court for a rule upon the attorney to show cause why his name should not be stricken from the roll.

This statute can not receive the narrow construction, that the person who may make the application must be a creditor. This would be against both its spirit and equity. The members of the profession, and other persons besides creditors, have a deep interest in the purity of those who sustain such important relations to the public. Besides, in motions of this character there is no individual party. The information is presented in the name and in behalf of the people, and in this case the State's attorney initiated the proceeding.

This court is responsible, to some extent, for the honesty and capacity of those who shall minister at the altars of justice. We must grant the license to practice, and in a proper case, it is our duty to disbar.

In the light of that responsibility, it is incumbent upon us, from the record presented, to declare that Ezekiel H. Palmer is unworthy of the license which he holds, and the confidence thereby created.

It is the opinion of a majority of the court, and is therefore ordered, that his name be stricken from the roll of attorneys.

SCOTT, J. dissenting.                    *Rule made absolute.*