## JEFFRIES, Adm'r, *v.* LAURIE.[1]

*(Circuit Court, E. D. Missouri. March 31, 1886.)*

ATTORNEY AT LAW—CONTEMPT—FAILURE TO OBEY ORDER TO PAY OVER MONEY COLLECTED.

> An attorney who disobeys an order to pay over to his client money collected in a suit instituted in this court, may be disbarred and committed to jail for contempt.[2]

At Law.

For a report of the opinion of the court upon motion for an order to compel Mr. Laurie to pay over the money collected for Mr. Jeffries, administrator, see 23 Fed. Rep. 786.

*T. B. W. Crews,* for plaintiff.

*Joseph S. Laurie, pro se.*

BREWER, J., *(orally.)* A brief statement of the preliminary facts in this case is important. The firm of Crews & Laurie were employed to prosecute a claim on a life insurance policy, which they did in this court, and in the supreme court of the United States, with protracted litigation. Before any decision was finally reached by the supreme court, Mr. Laurie, as one of the firm, compromised the claim of the insurance company, and received the sum of nine thousand and odd dollars. No part of that was paid to the plaintiff, but all retained by himself. He retained half of it on the claim that there was a contingent fee of one-half belonging to the firm. He retained the other half on the ground that there were unsettled partnership transactions between himself and his partner, and that his partner, upon a settlement, would be really owing him, and ought to pay this money to the plaintiff, who was his relative.

On the twenty-fourth day of April, 1884, two years ago nearly, the administrator filed a petition in this court for a rule on defendant to pay over the entire sum of $9,000. On the third of May a rule was issued against the defendant to show cause why he should not pay over this money as prayed, with leave to plaintiff on the incoming of the answer to move in respect thereto in 10 days. June 2, 1884, leave was given to the defendant until the next day to answer. On

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

[2] See note at end of case.

the third of June, 1884, the answer was filed, setting up, as I said, the claim that one-half belonged to the firm as a contingent fee; and, *second,* these partnership transactions between himself and his former partner, Mr. Crews. The case stood then before the court, upon various applications and discussions, for nine months or so, and until March 25, 1885. During those months sometimes counsel on one side would come in and sometimes counsel on the other, and there seemed to be great disagreement between them as to the state of the case. On March 25, 1885, in an endeavor to put the matter in such shape that there could be a full inquiry, leave was given to the petitioner to traverse the answer within three days. Ten days was given to the defendant to file affidavits in support of his answer, and ten days thereafter to the plaintiff to file counter-affidavits. On March 28th, within three days, a replication was filed by the plaintiff. On April 10th defendant filed his affidavits. On April 24th plaintiff filed his affidavits. On April 29th the case was submitted to the court. On May 1, 1885, 11 months ago, an order was made on the defendant to pay within 90 days into the registry of this court the sum of $4,635.50, that being the half conceded to be due to the petitioner. The matter has stood without further action from that time to this,—11 months. The money has not been paid into court. An application was made, and on that application an attachment was issued against Mr. Laurie on yesterday; and in response to that, his reply is that he has understood that Mr. Crews, his former partner, has settled with the administrator, and paid him that balance. No testimony is offered to support that. He further says that he expects to contest this final order, and to pursue remedies which the law gives to him for setting it aside. But nothing has been done during these 11 months.

In the case *In re Paschal,* decided in 10 Wall. 491, by the supreme court of the United States, which was a proceeding against counsel of that court, the court uses this language:

"The application made for an order on the respondent to pay money into court is in the nature of a proceeding as for a contempt. The application is based upon the power which the court has over its own officers to prevent them from, or punish them for, committing acts of dishonesty or impropriety, calculated to bring contempt upon the administration of justice. For such improper conduct the court may entertain summary proceedings by attachment against any of its officers, and may, in its discretion, punish them by fine or imprisonment, or discharge them from the functions of their offices, or require them to perform their professional or official duties under pain of discharge or imprisonment. The ground of the jurisdiction thus exercised is the alleged misconduct of the officer. If an attorney have collected money for his client, it is *prima facie* his duty, after deducting his own costs and disbursements, to pay it over to such client, and his refusal to do this, without some good excuse, is gross misconduct and dishonesty on his part, calculated to bring discredit on the court, and on the administration of justice. It is this misconduct on which the court seizes as a ground of jurisdiction to compel him to pay the money in conformity with his professional duties. The application against him in such cases is not equivalent to an action of debt or *assumpsit,* but is a *quasi* criminal proceeding, in which the question

is not merely whether the attorney has received the money, **but whether he** has acted improperly and dishonestly in not paying it over."

There was a claim in this case of a contingent fee of one-half,—a claim disputed. In respect to that claim the court took no action, but as to the one-half which was confessedly due to the plaintiff, the court held, and I have no question but what it held rightly, that it was no excuse to the attorney who received the money for not paying it over that he had an unsettled partnership dealing with his former partner in the practice of the law The party who received the money in this case, upon whom lay the primary duty of paying it over, was this defendant. He could not make his client suffer by reason of any quarrel with, or even wrong committed on the part of, his former partner. That duty he must discharge, and then, in appropriate proceedings, settle any controversies which he has with his former partner. It was upon that basis that the order was made. Ninety days was given for a compliance with the order. Eleven months have passed. This proceeding has been pending two years. Some time prior thereto the money was collected. Unpleasant as the duty is in such case, I know of but one way for a court to act, and that is to act firmly.

The defendant will be adjudged guilty of contempt of court, and the order will be that his name be stricken from the rolls of this court, and that he be debarred from practicing in this court; and, further, that he be committed to the jail of this city for the period of 90 days.

NOTE.

For a full discussion of the question of disbarment of attorneys, the grounds therefor, and proceedings in, etc., see In re Wall, 13 Fed. Rep. 814, and note, 820–823.

The supreme court may disbar an attorney for misconduct in fraudulently appropriating his client's money collected by him. In re Treadwell, (Cal.) 7 Pac. Rep. 724; People v. Cole, 84 Ill. 327; Kepler v. Klingensmith, 50 Ind. 434; People v. Palmer, 61 Ill. 255.

An attorney may be debarred for fraudulently and falsely representing that his client's money has not been collected, in order that he may retain the same. Slemmer v. Wright, (Iowa,) 6 N. W. Rep. 181.

In Re Temple, (Minn.) 23 N. W. Rep. 463, a note was sent to an attorney for collection, and the attorney, without the knowledge or consent of his client, agreed with the maker of the note that if she would board his law partner that he would credit her with the amount on the note. The attorney having failed to account to his client for the amount thus collected, was suspended from practice for six months.