(No. 14596.—Rule discharged.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* LEWIS F. BAKER, Respondent.

*Opinion filed February 19, 1924.*

1. DISBARMENT—*when Supreme Court will not order attorney to cease conducting an outside business.* The Supreme Court has power to disbar an attorney for unprofessional conduct or prohibit his practicing the profession for a definite period, but it will not ordinarily assume to order an attorney to cease conducting a legitimate business or be thereafter disbarred or suspended.

2. SAME—*what is unprofessional or unethical conduct.* Unprofessional or unethical conduct cannot be exactly defined, but the conduct of an attorney must necessarily be unprofessional where it is such that all right-minded people would conclude that it was not honorable.

3. SAME—*what unprofessional conduct will justify disbarment.* Unprofessional conduct which will justify disbarment must have an element of immorality or dishonesty or be of such character as to be in violation of private interests or the public good.

4. SAME—*an attorney will not be allowed to bring profession into disrepute.* No attorney at law will be permitted to engage or continue in a course of conduct which brings the profession into disrepute, and his conduct should be such as to secure and maintain the respect and confidence of the public in himself and in the profession generally.

5. SAME—*right to practice law is not absolute.* The right to practice law is not an absolute right but a privilege, which may be revoked when the attorney's misconduct makes him an unfit person to be allowed to hold a license to practice.

6. SAME—*cause of disbarment must be clearly shown.* An attorney can properly be disbarred only upon good cause shown in a judicial proceeding, and disbarment is justified only upon clear and satisfactory proof not only as to the act charged but also as to the motive.

7. SAME—*when conducting quiz classes for bar examinations does not warrant disbarment of attorney.* An attorney who for a money consideration engages in the business of conducting quiz classes to prepare law students to take the State bar examinations by intensive study is not guilty of such unprofessional conduct as to justify his disbarment, where there is nothing dishonest in the

attorney's conduct of such business and no violation of law or the rules of the court; but it is highly improper for an attorney to advertise that he can or will furnish students with questions to be asked upon bar examinations.

8. ATTORNEYS AT LAW—*construction of rule 39 as to qualifications for second or subsequent examinations.* Rule 39 requires that in order to take a second or subsequent examination for admission to the bar the student must diligently pursue the study of law for the full period between examinations, and it is the duty of the board of examiners to demand proof of such study before admitting the applicant to take another examination.

DUNN, CARTWRIGHT and CARTER, JJ., dissenting.

INFORMATION to disbar.

JOHN L. FOGLE, (WILLIAM H. SEXTON, and FRANK E. HARKNESS, of counsel,) for relator.

JOSEPH A. WEIL, A. D. CLOUD, and THOS. J. SYMMES, (JOHN A. ROSE, and McKINNEY, LYNDE & GREAR, of counsel,) for respondent.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an information to disbar Lewis F. Baker, an attorney at law of the city of Chicago, who was admitted as an attorney at law in 1913 and has since that time been engaged in the practice of his profession in the city of Chicago. The information charges, generally, that respondent devotes most of his time to instructing and preparing applicants for admission to the bar for taking the examination before the Board of Law Examiners; that for that purpose he conducts quiz classes, for which the members pay him a substantial sum of money, the object being to prepare students, by intensive work under the respondent's supervision, to successfully pass the examination for admission to the bar without regard to the student's previous

training or knowledge of and acquaintance with the fundamental principles of law; that respondent is not connected with any college or institution giving instruction to students but conducts his classes for the purpose of "cramming" applicants to pass the bar examination, and the instruction given by him is limited to the subjects mentioned in rule 39 of this court.

The first count specifically charges respondent has for many years made a practice of cultivating the acquaintance of members of the Board of Law Examiners for the purpose of procuring their good will and to use the same in aid of his business; that he employed a member of the board to draft a cross-bill in a suit pending and paid him $200 for his services; that respondent told said member he was conducting a law school, and induced the member to deliver a lecture in respondent's office to students who were taking his quiz course, for the purpose of causing the students to believe respondent could aid them in passing the examination; that respondent had visited two members of the board distant from Chicago for the purpose of cultivating their acquaintance, in the hope that it would aid him in his business.

The second count charges that in the past there had been rumors that certain applicants for admission to the bar had been able to procure, in advance, questions to be put by the Board of Law Examiners in an examination, and that respondent had been active in encouraging the circulation of the rumors; that at the July, 1921, examination, through an error, the printed questions to be used in the examination twenty-four hours later by the board were inadvertently passed among part of the applicants, but the mistake was immediately discovered and efforts made to have the lists returned; that one of the lists, or a typewritten copy of it, appeared the same day in respondent's office and was used by him in preparing his students for the examination; that respondent did not, as it was his duty to do, notify the board

of the matter and endeavor to keep it from the knowledge of his students but posted the list in a conspicuous place in his office, open to the view of the applicants for admission to the bar.

Count 3 charges that prior to the December, 1920, examination, which was held by the board in Chicago, the respondent procured or claimed to have procured advance information of the questions, or some of them, which would be put to the applicants for admission to the bar, and offered to sell the information to Robert J. Shaw for $300, and to C. Lysle Smith without cost to him, to be paid for by Smith's friends.

Count 4 charges that it was the practice of respondent, on behalf of applicants taking his course who were lacking in the time of study required to be shown by proofs to qualify them for taking the examination, to furnish them affidavits that the applicants had studied under his personal tuition the period of time covered by their attendance on respondent's classes,—and this, it is alleged, was an evasion of the rule of this court.

After answer filed to the information the cause was referred to a commissioner, who heard the evidence and filed his report, and the case is submitted for decision on the commissioner's report, without exceptions having been filed by either party. *People* v. *Gilbert,* 263 Ill. 85.

The report of the commissioner is of considerable length, but the importance of the questions presented is such that we think it should be set out in full. It is as follows:

"I, the undersigned, Roswell B. Mason, a master in chancery of the circuit court of Cook county and special commissioner of the Supreme Court of the State of Illinois, do now respectfully submit the following report pursuant to an order of this honorable court entered June 20, 1922:

"Commencing on July 6, 1922, and at various dates thereafter, down to and including December 4, 1922, I was

attended at my office, room 1602 Marquette building, Chicago, Illinois, by Mr. John L. Fogle on behalf of the relator and Mr. Thomas J. Symmes on behalf of the respondent. I have taken herein the depositions of Elmer H. Bielfeldt, Lysle Smith, Robert J. Shaw, William B. Hale, Albert Watson, A. M. Rose, James W. Watts, Lewis F. Baker, Albert J. Ginsberg, John K. Monihan, Samuel L. Golan, John J. Whiteside, Morris Fisher and Albert Woods. Prior to the examination of said witnesses they were each and all duly sworn by me according to law, and their said depositions constitute, together with the instruments in writing described in and attached to said depositions, the entire transcript of evidence in this cause. Said transcript of evidence is in my possession, and I am ready to certify it up to this honorable court in case either of the parties hereto shall so desire. This case was argued before me by counsel for the parties in interest in the month of February, 1923. I have neither asked nor received any compensation whatsoever for taking such evidence and making this report. From all the evidence offered and received before me, being the evidence included in said transcript of evidence and no other evidence, I find:

"1. The respondent, Lewis F. Baker, was by the Supreme Court of Illinois, on or about October 8, 1913, admitted and licensed as an attorney and counselor at law of the State of Illinois under the then existing rules of this honorable court and his name entered on the roll of attorneys as an attorney and counselor at law of the State of Illinois. Said Lewis F. Baker is now, and has been since said date, engaged in the practice of law in the city of Chicago, in said State of Illinois.

"2. Since the year 1913 said respondent has devoted his time almost exclusively to the business of instructing and preparing applicants for admission to the bar for their respective examinations by the State Board of Law Examiners of the State of Illinois. The method followed by re-

spondent in carrying on such business is to conduct what is known as a quiz class previous to the respective examinations, upon the payment of $25 from each applicant enrolled in the class. Said respondent admits to his quiz class only those who have complied with the rule of the Supreme Court in reference to preliminary education and previous law study. Said work of said respondent is conducted by him solely for the revenue accruing to the said respondent therefrom, and is of the same nature as that carried on by several other quiz masters in Chicago, some of whom are said to be attorneys at law.

"3. The sole object of such quiz-class work and instruction is to insure, as far as may be, that the applicant taking such course, without regard to his actual knowledge and acquaintance with the fundamentals of the law, shall by reason of such intensive work under the guidance of said respondent, be enabled successfully to meet the test of said Board of Law Examiners at the subsequent regular examination for admission to the bar. Said respondent is connected with no college or institution giving training to such students and is not engaged in conducting quiz classes covering specifically or generally any course in any college or institution of learning. Said respondent conducts said quiz course entirely independent of any such college or institution and entirely independent of any course of studies theretofore pursued by such applicants, and solely for the purpose of preparing such applicants to meet the bar examinations as the same are given from time to time by said Board of Law Examiners, limiting the instruction and quizzing to the topics set out in rule 39 of this honorable court, upon which it is prescribed applicants for admission to the bar 'must sustain a satisfactory examination.'

"4. Respondent is possessed of marked ability and shrewdness and has acquired great proficiency in said work. He has for many years carefully studied each and every bar examination and each and every question propounded

by the said Board of Law Examiners at the examinations conducted by it and has collected, codified, arranged and systemized such questions. He has given careful attention and study to most, if not all, the published quiz books and questionnaires on the topics mentioned in said rule, has studied the statutes and decisions of the Supreme Court of Illinois and the leading text books on the subjects mentioned in the rule, and has prepared a list of over 5000 questions and answers relating to the topics set out in said rule 39, which said list he uses in his said quiz course. He divides his students into classes, and nearly always has from 100 to 115 students taking his quiz course prior to each examination.

"5. Respondent claims that approximately 85 to 95 per cent of the applicants taking his quiz course are successful in the succeeding examination, while the usual percentage of success of applicants not so prepared is much less. He also claims that by his method he is able to assure his students that they will have from 20 to 45 questions, verbatim or in principle, to be asked at the succeeding examination. There are 70 questions asked on each examination. This claim is made by respondent to induce applicants to take his quiz course. In effect, respondent guarantees to furnish verbatim questions and answers in from 28 to 64 per cent of the succeeding examination. On the hearing before the committee on grievances of the Chicago Bar Association said respondent testified that he had prior to each examination from 25 to 45 verbatim questions,—'that is, exactly verbatim,'—of the questions that were given out at said examination. Lest there should be a possible misunderstanding, the commissioner thinks it only fair to the respondent to say here that both on the hearing before the said grievance committee and before the commissioner the respondent denied that he ever saw any of the actual questions put at the examination prior to the examination, except once in 1918 under circumstances hereinafter described. On the

hearing before the commissioner the respondent modified his claim, and insisted that he always had 20 questions verbatim and 25 more in principle prior to each examination, and did not claim before the commissioner that he had prior to each examination from 25 to 45 questions verbatim.

"6. Respondent always tells his students at the beginning of his quiz classes that it is necessary for them to work hard and to keep order. Respondent secures students for his quiz classes from the established schools and colleges of law in Chicago and in other States on circulars and representations, either by letter or in person or by agents, of the thoroughness and value of his quiz course and of his great success in preparing students for the bar examinations. His advertising and solicitation of students are systematic and extensive.

"7. Respondent regularly conducts said quiz classes for ten successive weeks prior to each examination, charging $25 to each student taking the same, and including therein for five days just previous to and during the examinations a special intensive or review quiz covering the whole course. For this he makes no additional charge to his regular students who have paid $25, but charges outsiders who have come in for the special intensive quiz only $10. His quiz course consists of questions that he has compiled covering the entire subject. He usually has 20 basic or fundamental questions on each subject, which, with the answers thereto, he urges each of his students to learn. He goes with his students to the place where the examination is held and answers questions that the students may put to him between the sessions of the board of examiners.

"8. In regard to the charges of specific acts of misconduct against respondent I make the following findings:

"(1) While respondent has made a point of meeting and becoming acquainted with various members of the State Board of Law Examiners, undoubtedly with the idea of advancing his business interests, he has not committed any

impropriety, by word or act, in connection with such acquaintanceship. While respondent has employed one member of said board living in a county other than Cook county to draft a cross-bill in a proceeding pending in Cook county, this employment, as disclosed by the evidence, was in no way improper and the fee of $200 paid by respondent for such service was a reasonable fee and was paid upon an oral bill rendered to respondent. Respondent did not represent to said member that he was conducting a law school and did not induce said member to attend in the office of respondent and deliver a lecture on a legal subject, and said member did not deliver a lecture on a legal subject to the persons who were taking the said quiz course from respondent.

"(2) In reference to many of the past examinations conducted by said board rumors have been circulated, both in Chicago and Springfield, that certain applicants for admission have been able to procure in advance the questions to be put by said board. Respondent has not been active in permitting and encouraging the circulation of said rumors. At the July, 1921, examination, through an error, printed lists of questions to be submitted to the applicants at a session to be held twenty-four hours or more later were inadvertently passed among a part of the applicants by a monitor or some person working under the direction of the member of the board in charge thereof. The mistake was immediately discovered and due effort was made to have the lists so given out by mistake returned. A copy of one of said lists appeared thereafter on the same day in the office of respondent. Respondent did not use it in any way in preparing the persons taking his quiz for the examination thereafter conducted. On the contrary, he advised his students to have nothing to do with it. He did not post the questions in his office. He did not call the attention of the board to said situation, and testified that he did not do so because he knew that the board would not

use the questions thus inadvertently given out in advance. In the year 1918 a list of part of the questions used on an examination in that year was obtained by some person unknown, prior to the examination. Respondent was asked by some of his students about some of these questions. He saw a typewritten copy of 18 or 19 questions which he was told was taken from said list. They were in an adjoining office. When respondent learned the circumstances he refused to have anything to do with the questions. Respondent told a member of said board of the fact that this list of questions had gotten out prior to the examination.

"(3) In regard to the charge that prior to the December, 1920, examination conducted by said board in Chicago respondent had procured or claimed to have procured advance information of the questions, or some of them, to be put by said board to the applicants at said examination, I find that respondent did not procure or claim to have procured advance information of said questions or any of them. It is charged in the information that respondent offered to sell information in advance of the said examination, relating to the questions to be asked at such examination, to one Robert J. Shaw upon the payment to the respondent by said Shaw of the sum of $300. This charge is refuted by a preponderance of the evidence, and I find that said respondent did not offer to sell advance information of the questions to be put at the December, 1920, examination to said Robert J. Shaw and that respondent did not have such advance information. It is further charged that respondent offered to sell to C. Lysle Smith, without direct cost to him, advance information of the questions, or some of them, to be put by said board to the applicants on the December, 1920, examination. There is no evidence whatever to sustain this charge. I find that respondent did not offer to sell such information to said C. Lysle Smith. Respondent has never procured or attempted to procure advance information of questions to be put on any examina-

tion by said Board of Law Examiners, and has never sold or offered to sell to any applicant or possible applicant any advance information or any questions that were to be put or supposed to be put at a bar examination, in advance of such examination.

"(4) Where the applicants taking respondent's quiz courses have previously failed in taking the bar examinations, it has been the custom of respondent, on behalf of such of the applicants taking his course as were lacking in the time of study required to enable them to take another examination, to furnish the necessary proofs to make up such time by submitting to said board affidavits that said applicants had studied during the requisite time under his personal tuition for the period of time covered by their attendance on such quiz classes so conducted by respondent. In the opinion of the commissioner these affidavits constituted evasions of the rule of this honorable court. Taking respondent's quiz course is not, in the opinion of the commissioner, the study of law contemplated by the rule.

"9. There have been from time to time repeated rumors that the questions given out at bar examinations held by said board have been procured or given out in advance of the date of such examination. These rumors are not sustained by the evidence, except that in the case of the examination held in 1918, mentioned above, someone procured in advance of the examination, without the knowledge of the board, a list of part of the questions. Except for this there is no evidence that any questions or set of questions was obtained prior to any bar examination by any applicant or other person, and no evidence at all that the respondent was a party to or had anything to do with obtaining any such questions. There is no evidence that the State Board of Law Examiners are at fault in any way. On the contrary, the evidence shows that said State board conduct examinations faithfully and fairly, and take every precaution to prevent any leaks and to prevent any person whatsoever

obtaining any advance information of the questions that are to be asked at the examination.

### "Conclusions.

"10. While quiz courses and quiz books are of value in preparing students for examinations and cannot be reasonably objected to when not abused, the quiz courses of respondent are calculated solely to 'cram' the students for imminent examination, with definitions and brief statements of legal principles, unsupported by training in reasoning or the analysis of facts or the application of law to facts. Success under respondent's system is purely a feat of memory. The work of respondent, as hereinbefore set out, results in his students passing the examinations without regard to the question whether they are or are not fitted by experience, training and study to be admitted to the bar, and largely on the applicant's ability temporarily to memorize, verbatim, questions and answers given him by the respondent. This results in a lowering of the standard of admission to the bar.

"11. The object of the examinations conducted by the State Board of Law Examiners is not to create an obstacle to admission to the bar, in surmounting which an intensive study or memorization of the character hereinbefore described should be the best preparation, but they are for the purpose of ascertaining whether applicants who have the required schooling and training have in the course of their legal education achieved that degree of efficiency which enables the board and the court to say by their due admission and enrollment that as attorneys they are to be trusted with the lives, liberty, honor and property of the citizens of Illinois.

"12. The respondent professes to be sincerely convinced of the propriety of his conduct in holding the quiz courses described. All the commissioner can say is that the respondent is an exceptionally intelligent man and ought to know better.

"13. In the opinion of the commissioner the conduct of the respondent in holding the quiz courses described above is unethical and unprofessional.

"14. While in the opinion of the commissioner the evidence does not warrant a recommendation by the commissioner that respondent be disbarred, the commissioner recommends that respondent be required by this honorable court to desist forthwith from giving quiz courses to applicants for admission to the bar."

It will be seen the commissioner completely exonerates respondent from all the specific charges made in the information. The commissioner's conclusion is that respondent's conduct in holding quiz courses is unethical and unprofessional, but he reports that would not warrant his disbarment. The commissioner's recommendation is that this court require respondent to forthwith desist from giving quiz courses to applicants for admission to the bar. Although some specific charges of dishonest or fraudulent conduct were made in the information there was no proof to sustain them. There was nothing unfair or fraudulent in respondent's conduct of his quiz course or in his relations with his students. He accepted none except those who were qualified by preliminary education and previous study of law to be permitted by the Board of Law Examiners to take the examination. The only assistance he gave any of them in meeting the requirements of the rule entitling them to be admitted to take the examination was to those who had failed to satisfactorily pass the examination. Under rule 39 a rejected applicant cannot be again admitted to take the examination until one examination (two, if a third or fourth rejection,) has intervened after such rejection, and such an applicant shall file with the board proof that he has diligently pursued the study of law during the period subsequent to the prior examination. Respondent furnished the proof for such students that they had studied law for

the time they were members of his class under his personal tuition. There is no intimation that respondent made any false affidavits. The only question raised on that branch of the case by the commissioner's report is his conclusion that a student taking the respondent's quiz course was not studying law within the contemplation of the rule of this court and such was an evasion of the rule. This would be true if the applicant pursued his studies for the ten weeks, only. For the time it covers, however, it conforms to the rule. The commissioner finds the respondent is a man of marked ability; that he has given careful attention to the study of the statutes, the decisions of this court and to the leading text books on the subjects the applicant is required by rule 39 to pass a satisfactory examination upon, and has prepared a list of over 5000 questions and answers relating to the subjects required by the rule. Respondent has from 100 to 115 students at a time and divides them into classes. It appears to us that his students are studying the law on the very subjects required by the rule of this court, and, according to the commissioner's report, under a competent instructor. His methods of instruction may and do differ from those of a standard law school, but the student was required to study law and be quizzed on the different subjects studied, by and under the personal tuition and direction of respondent.

While the testimony taken by the commissioner has not been filed in this court, his report shows four members of the Board of Law Examiners testified as witnesses, and it is apparent from the commissioner's report the members of the board, or at least some of them, were personally acquainted with respondent and had knowledge that he was conducting a quiz course. As there is no proof or claim made that the board ever objected to or questioned the proofs made for applicants who were his students, the board, it would seem, did not consider what respondent was doing was an evasion of the rule. If the board thought it

was an evasion it should not have accepted such proofs, but having accepted them as a compliance with the rule it cannot be said respondent should be disbarred for that reason, and the commissioner does not recommend that he be disbarred on that account. The requirement of the rule is that the student diligently pursue the study of law for the full period between examinations, and it is the duty of the board to demand proof of such study before admitting the applicant to a second or subsequent examination. But there is no proof that respondent has aided in the evasion of the rule.

The commissioner's conclusion is that conducting quiz courses is unethical and unprofessional, and that this court should not disbar him but should require him forthwith to desist from conducting them. Just how this court can compel respondent to desist is not pointed out by the commissioner or by counsel. We have the power to disbar a lawyer permanently or for a definite period, but there is nothing in the nature of the business of conducting a quiz course in law, or any other legitimate subject, that would authorize this court to enter an order that an attorney conducting such course should forthwith stop it. Perhaps what the commissioner had in mind was that the court could make an order that respondent be suspended for a short time for the purpose of giving him an opportunity to retire from the business of conducting quiz courses, and if he failed to do so, at the expiration of the time for which he was suspended he then be disbarred. Without stopping to consider the power of the court to do that, so far as we know it has never made such an order, and counsel for neither side suggest that any such order be made.

Counsel for relator argue that the commissioner's report justifies the disbarment of respondent, and his counsel argue that it shows no justifiable grounds for disbarment. The ground upon which respondent's disbarment is asked is that his conduct in holding quiz courses is unethical and

unprofessional. Exactly what acts or conduct measure up
to the standard of being ethical is not always easy to de-
fine. Lexicographers define the term as meaning the phil-
osophy of morals or pertaining to morals. Some conduct
may be of a character to show such moral obtuseness that
all would say it was immoral or unethical, but the division
line that distinguishes the ethical and unethical is often so
indistinct as to cause a contrariety of opinion as to whether
acts were or were not ethical. It seems, however, as used
by the commissioner, "unethical" is substantially synony-
mous with unprofessional, for there was nothing immoral
in conducting the quiz courses by respondent. What, then,
characterizes it as unprofessional? It should be borne in
mind that the quiz courses were independent of and had
no connection with respondent's relations with his clients.
His classes were not clients who sought his services in the
transaction of business and he did not solicit clients to be-
come members of his classes. He did not pretend to aid
members of his classes in their preliminary qualification to
enable them to take the examination. They were composed
of men who had already qualified by preliminary education
and by study of the law to be admitted by the board to
take the examination for admission to the bar. For ten
weeks he conducted a quiz course of instruction or review
of the subjects which the students had already studied in
their law course, and upon which the rule of this court re-
quired them to be examined, to better prepare them for
the examination. Respondent should not and must not ad-
vertise or represent that he can or will furnish his stu-
dents with a question or questions which will be used by
the Board of Law Examiners in the examination of stu-
dents for admission to the bar. Such advertising is wholly
improper. The commissioner reports the work respondent
was doing was of the same nature as that carried on by
several other persons in Chicago, some of whom are attor-
neys at law. What we have said on the subject of what

311—6

conduct is unethical is equally applicable to what is or what is not unprofessional. Where the conduct of an attorney is such that all right-minded people would conclude that it is not honorable it must necessarily be unprofessional.

The grounds upon which counsel for relator base their argument that respondent's conduct was dishonorable or unprofessional is the claim that he did not aid in guarding against the admission to the profession of candidates "unfit or unqualified because deficient in either moral character or education," (Canon 29, Canons of Ethics adopted by the American and Illinois State Bar Associations,) and that respondent's conduct of quiz courses involved disloyalty to the law. (Canon 32.) What respondent did had no connection with the moral fitness of the applicant. That is required to be determined by a committee on character and fitness appointed by this court, and respondent had no connection with that committee and never did anything to influence its actions. The charge that respondent violated canon 29 in not aiding to protect the bar against the admission of applicants deficient in education we do not think is sustained by the commissioner's report. As we have said, the respondent did not aid his students in meeting the requirements of rule 39 either as to preliminary education of law study, with the exception above noticed, as to students who had failed to pass the examination. His classes were composed only of students who had previously completed the requirement of the rule to be admitted to take the examination.

No doubt respondent represented to his students that such a course as he conducted would be of great aid in enabling them to successfully pass the examination, and there is no doubt that was the object of the students in taking the ten weeks' course under his tuition. Does that render respondent's conduct unprofessional to such an extent as to justify revoking his license to practice law? It does not appear before this time to have been so regarded

by the bar or the courts.  The commissioner reports that other attorneys at law in Chicago are doing the same kind of work, and after a somewhat extensive investigation we have been unable to find a decision of any court upon the question.  No one would contend that a lawyer should be disbarred who, instead of opening an office and practicing his profession, devoted all his time to teaching law.  Many very able and well known lawyers have done that very thing and many well known lawyers devote a part of their time to teaching in law schools.  There is this difference in that kind of teaching and respondent's teaching:  that in law schools covering the period a student is required to study law the object is to make the student acquainted with the fundamental principles of law to prepare him to practice his profession, while respondent's course was given to supplementing the work already done by giving the student a ten weeks' review or quiz on the subjects he had studied in the law school in order to refresh his memory and better prepare him to pass the examination for admission to the bar.  A lawyer who has succeeded in establishing himself in a paying practice of the law might consider it would be beneath his dignity or that it would be unprofessional in him to conduct such courses as respondent conducted, but the views of such a lawyer cannot be the sole criterion for determining what is unprofessional conduct.  It would not seem strange if in some respects the successful lawyer's ideas of professional conduct should differ from the ideas of those less fortunate.  Of course, the ideals of the lawyer struggling to make enough to support his family can no more be accepted as the standard than those of his more fortunate brother.  Common sense and a spirit of fairness must, in the absence of adjudication, be relied upon for guidance in determining the question.

Unprofessional conduct which would justify disbarment must have an element of immorality or dishonesty, or be of such character as to be in violation of private interests

or the public good. It is not claimed respondent's conduct has been in any sense dishonest or immoral or injurious to the public, except, as stated, that he has failed to live up to the standard of canon 29. We are unable to say that charge has been sustained by the commissioner's report, as we cannot say the profession or the public has been or will be injuriously affected by respondent's conduct.

No attorney at law should be permitted to engage or continue in a course of conduct which brings the profession into disrepute. It is a vital necessity to the well being of society and the administration of justice that attorneys, who are officials of the court and a part of our judicial system, should exhibit the most scrupulous care in conducting themselves and their business in such manner as will secure and maintain the respect and confidence of the public in the attorney and the profession generally. The trust and confidence which must necessarily be reposed in an attorney by clients who confide to him most intimate secrets and their most sacred rights, require in the attorney a high standard and appreciation of his duty to his clients, his profession, the courts and the public. We feel very little charity for an attorney who is so morally obtuse as not to recognize the sacredness of his duties and the necessity for irreproachable conduct in his profession. His failure to live up to the requirements for a proper discharge of the duties of his office is only a little less injurious to the public than the failure of the judge on the bench in the proper conduct and discharge of his official duties. The right to practice law is not an absolute right. It is a privilege, which may be revoked when the attorney's misconduct makes him an unfit person to be allowed to hold a license to practice. An attorney can properly be disbarred only upon good cause shown, in a judicial proceeding. There is here no controversy about the fact as to what respondent's conduct was. This court has frequently considered the sufficiency of the proof required to authorize disbar-

ment.  In *People* v. *Matthews,* 217 Ill. 94, the court held disbarment was only justified upon clear and satisfactory proof.  In *People* v. *Harvey,* 41 Ill. 277, the court said the proof must be clear and free from doubt not only as to the act charged but also as to the motive.  In *People* v. *Barker,* 56 Ill. 299, the court said slight evidence would not warrant disbarment.  An attorney is entitled to practice his profession, and should not be denied the right to do so "except upon clear proof of willful and corrupt professional misconduct."  Many more of our decisions are to be found citing and approving the cases above referred to.  Practically all the disbarment cases we have examined charged conduct of the attorney which was fraudulent or dishonest.  A few charged soliciting business as an attorney in a manner which was unprofessional and tended to bring the bar into contempt.  We have already referred to the fact that there was no connection between respondent's quiz classes and his practice of the profession, further than the fact of being a lawyer enabled him to secure students for his courses.  We are unable to see the ethical difference between what respondent did and substantially the same thing which it is generally understood is being practiced by some colleges and universities.  This court said in *People* v. *Palmer,* 61 Ill. 255, that it was not its province to pass on the style of manners becoming to an honorable member of the profession.  We are not to be understood as commending respondent's actions in conducting his quiz courses.  After careful consideration and deliberation we only hold that in doing so he was not guilty of unprofessional conduct of so serious a character as to justify the destruction of his professional life by disbarment.       .

The rule is discharged.        *Rule discharged.*

DUNN, CARTWRIGHT and CARTER, JJ., dissenting:

The rules of the court prescribe the qualifications of general and legal education and of character and general

fitness requisite for admission to the bar and provide the method by which these shall be ascertained. The examination which must be sustained in the various subjects presented is intended to ascertain the fitness of the applicant, by reason of his mental training acquired by study and his legal knowledge, to undertake the practice of law. The respondent is not engaged in the preparation of students for the bar but for the bar examination, and this not by a study of the legal principles involved in the subjects on which the examination must be conducted, but by the memorizing of answers furnished by the respondent to questions which he has also furnished, with the statement that he is furnishing a large proportion of the questions to be asked at the examination, together with the answers. He advertises, systematically and extensively, his great success in thus enabling applicants to pass the bar examination, and a considerable proportion of the applicants at each examination are those who under his tutoring have prepared to pass an examination by the study of questions and answers, of which a large proportion,—possibly a half,—of the particular questions have been furnished to the applicants in advance. This is a clear evasion of the rule, which contemplates an examination which will not be merely a test of memory but will test the mental training, reasoning powers, knowledge of legal principles, mental capacity and general educational fitness of the applicant. The work of the respondent interferes with such an examination and makes the result depend largely upon the superficial acquaintance with a subject, which a good memory will enable the applicant thus examined temporarily to retain and display, and not upon any real knowledge. It not only lowers the educational standard for admission to the bar but also the moral standard. The entrance of a lawyer upon his profession ought not to be attended with an evasion of the rule providing for his admission.

The conduct of the respondent should be condemned instead of condoned, and he should be required to desist from it and from giving courses of the character of those which he does give in preparation for the bar examinations.