(No. 23219.— )

IN RE JOHN E. MALEY, Attorney, Respondent.

*Opinion filed April 17, 1936.*

JOHN E. MALEY, *pro se.*

GEORGE D. BURROUGHS, *amicus curiæ.*

Mr. JUSTICE FARTHING delivered the opinion of the court:

This proceeding against John E. Maley, the respondent, was begun pursuant to the order of this court dated April 21, 1933. The board of governors of the Illinois State Bar Association has filed a report and has moved that the respondent be disbarred and that his name be stricken from the roll of attorneys. The respondent has filed exceptions to the report.

The testimony in this case discloses that John E. Maley was graduated from law school in 1892 and has practiced law since then at Galesburg, Knox county, Illinois. About 1920 he defended a man charged with murdering an engineer and a fireman employed by the Burlington railroad. Maley, according to the witness Robinson, appeared to be asleep while jurors were being examined and when some witnesses testified. Another witness says Maley dropped his pencil two or three times, appeared to be asleep, made

an exclamation as to there being too much noise, and according to both these witnesses he appeared to be under the influence of liquor. However, the accused seems to have received only a penitentiary sentence, and there is no claim here that Maley's conduct in any way interfered with the trial of the case.

It is also shown the respondent received $93.35 in cash and a note for $50 on or about November 3, 1925, from the mother of Fritz Carlson, a young man who later pleaded guilty to forging and passing three checks totaling $40. The respondent went into court the day Carlson was arraigned, and on that day he had been drinking. He advised Carlson to plead guilty. Another lawyer, James E. Davis, a friend of Carlson's father, asked the court to give him a day's time to find out about the case and to see that the Carlson boy got fair treatment. The court granted a day's continuance and on the 5th or 6th of November, 1925, continued the case until the February term. At that time the defendant pleaded guilty. Fritz Carlson said Maley had received "right at a hundred dollars." Davis testified that he saw the respondent two or three times and obtained from him the sum of $93.35 and a note for $50 which Mrs. Carlson had given the respondent for his fee, and that this was either all the money she had paid Maley or all but $10. The respondent testified that he paid Davis all the money Mrs. Carlson gave him and that he also gave Davis the $50 note. Davis' book entry showed that he received the money from Maley on November 16, 1925. At most the respondent had this note and the cash less than two weeks.

On two occasions the respondent was led out of the court room, once by direction of the judge and once by a bailiff on his own initiative. On both occasions the witnesses against the respondent say he was intoxicated. The occasion when the judge ordered him removed from the court room was in October, 1933. On that afternoon some

matter in connection with a pending divorce case in which Maley represented the complainant was brought up immediately after the noon recess. The complainant had made oath that she was without means or property and had been permitted to sue as a poor person. On the day in question the chancellor learned that she and her husband owned some real estate jointly. Maley was talkative and discourteous to opposing counsel, and because of his conduct the court ordered the bailiff to remove him from the court room. There is no testimony in this record to indicate that the respondent caused the false affidavit to be made. Although the complaint against the respondent is not abstracted, there is nothing to indicate that there was any charge against him with reference to this matter, but if there were, there is nothing to show that he was guilty of any misconduct in connection with the making of the affidavit. He and his witnesses testified that on the day the judge ordered him removed from the court room he had been having some teeth removed, and that on the day previous an anesthetic had been administered to him. That day a dentist had lanced an abscess preparatory to removing an impacted molar. The respondent testified that on all the occasions when witnesses said he was intoxicated he was highly nervous, sick, and that he had been taking medicines.

The respondent insists that *People* v. *Palmer*, 61 Ill. 255, 256, would govern even if he were in the habit of becoming intoxicated, and he denies that he was ever intoxicated. The language in that case he relies upon is as follows: "This court is not constituted a censor of morals, so as to require it to pronounce upon the style of manners and conversation which becomes an honorable member of the legal profession. This would be an unwarranted extension of its powers." The commissioners, in reply, cite *People* v. *Tracey*, 314 Ill. 434, and *In re Macy*, 196 Pac. (Kan.) 1095, 14 A. L. R. 848, in support of their conten-

tion that drunkenness, either habitual or otherwise, is a ground for disbarment. The *Tracey case* involved more than drunkenness, and in it the respondent was disbarred because he had converted several hundred dollars of his clients' money to his own use. The *Macy case* supports the contention of the commissioners, but the facts in that case are more prejudicial than those disclosed here.

This respondent has been guilty of conduct that is not creditable to him and that has interfered with the orderly progress of litigation. He is not shown to have been dishonest or to have been guilty of fraud or the conversion of any money belonging to his clients. The record shows that he should be disciplined but it does not warrant his disbarment.

It is the judgment of this court that the respondent be suspended from the practice of law for a period of six months from the date of the filing of this opinion.

*Respondent suspended.*