MATTER OF GEORGE W. WOOL.

# In the Matter of George W. Wool, an Attorney and Solicitor.

*Attorney: Fraud: Abuse of confidence: Equity suit: Proceedings to disbar: Practice.* Where a suit in equity against an attorney and solicitor, charging him with fraud under circumstances implicating him in a gross abuse of confidence, has been before the court on the facts and the court has decreed against him, an order to show cause why he should not be struck from the rolls may properly be based on the decree, or be incorporated in the decree itself.

*Practice: Proceedings to disbar an attorney.* Upon an order to show cause based upon such a decree, which has been rendered after a full hearing upon the very facts involved, there is no reason why any reference to take further evidence on the main facts should be allowed, unless on a showing which would justify a rehearing.

*Proceedings to disbar an attorney: Showing in defense.* In the present case, however, the respondent was permitted to make such showing as he deemed proper, which he did by affidavits.

*Questions of fact: Chancery causes: Opinion of circuit judge: Appellate court.* The decision of the circuit judge on the facts in a chancery cause is entitled to great weight. with the appellate court, he being supposed to have some better personal knowledge of the witnesses than is to be presumed in the appellate court; but the latter court has no right, if plainly convinced, to abdicate its own duty of determining every case upon its own view of the facts.

*Determination of questions of fact: Belief: Reasons.* It is one of the difficulties attending all tribunals passing upon facts, that the reasons for believing particular witnesses, or particular testimony, in preference to others, cannot be defined; but they must nevertheless act on the belief which the testimony creates; and that belief does not usually involve the rejection or acceptance of all that is said by any particular witness.

*Proceedings to disbar an attorney: Fraud: Defense: Immaterial matters.* A showing that relates only to the good character of one who testified as a witness on respondent's behalf in the equity suit, where his testimony tended only to contradict that of complainant as to the manner in which the latter claimed the fraud had been brought about, and was not conclusive on the main fact, is not a very pertinent answer to an order to show cause why respondent should not be disbarred for the fraud and abuse of confidence of which he had been decreed guilty in the equity suit.

*Frauds: Character of person defrauded.* Nor is a showing of bad character of the complainant in the equity suit very material to the issue on such order. The law does not deny its protection against frauds to all but the virtuous, though it may require strong proof that they have been defrauded.

*Heard April 10. Decided April 18.*

Proceedings to disbar an attorney.

MATTER OF GEORGE W. WOOL.

*Otto Kirchner*, Attorney General, for the People.

*F. A. Baker*, for respondent.

CAMPBELL, J :

A decree was made at the last term, in the case of *Bel-lair v. Wool and Prentis*, which rested on a fraud charged to have been practiced by Wool on complainant, under cir-cumstances indicating a gross abuse of confidence. We there-upon entered an order to show cause why he should not be struck from the rolls.

Upon the return of this order, certain affidavits were presented, to which reference will be made directly, and a question was suggested as to the correct practice in such a case as this, and a suggestion was made that a reference ought to be granted.

The charges made against Wool in the bill of complaint, which formed the only basis of action in that case, were such as, if true, were enough to render him deserving of punishment. If no such suit had been brought, and a complaint had been laid before us against him, a full hear-ing on evidence taken in some adequate way would have been necessary. But no method of examination adopted in summary proceedings could have been so full or suitable as that furnished by the issues and hearing in an equity cause, where the witnesses are examined and cross-examined in such manner as the parties desire, and there is time for an ex-haustive scrutiny. After such a hearing there is no very good reason why any further showing on the main facts should be had, unless under circumstances which would jus-tify a rehearing. Accordingly, where the court has itself heard the cause and passed upon the facts, as is done in equity, an order to show cause is properly based on the de-cree, and might have been incorporated in the decree itself. This was the practice followed in *Goodwin v. Gosnell*, 2 *Collyer's Ch. R.*, 457, where reference is had to a similar practice adopted by *Lord Rosslyn* in an unreported case,

*Dungez v. Angove,* found in the Registrar's books. The law courts act always in a summary way on such complaints, whether based on convictions or new charges, and the Queen's Bench, where the master of the crown office occupied a peculiar position, is the only law court which allowed the testimony to be taken out of court before him, though still acting itself on that evidence. See *3 Chitty's Gen. Pr., 38; Smith's Case, 1 Br. & Bing., 522; 1 Tidd Pr., 88, and cases cited.*

In the case of *Goodwin v. Gosnell,* there was evidence of subsequent good conduct and reparation, which induced the court to regard the respondent as not so guilty morally as to render it necessary to inflict the extreme punishment, which would otherwise have been ordered.

In the present case we were disposed to permit the respondent to make any showing he thought proper, leaving its effect to be considered afterwards. The showing has been confined to affidavits intended to support the credit of Mr. Minock, one of the witnesses for the defense, and to corroborate Wool in a few specific facts which he had sworn to, as well as to assail the reputation of the complainant, Mrs. Bellair, and her husband, who were main witnesses for complainant's case. There is also a suggestion, purporting to be founded on statements of the judge who tried the cause below, indicating that his belief was based on discrediting the complainant's testimony.

So far as this latter point is concerned, it had its due weight in our consideration of the appeal. The fact that a judge who has perhaps some better personal knowledge of the witnesses than is to be presumed in an appellate court, has believed one side rather than the other, must always weigh with the latter, who will not overcome the presumption of his correctness unless plainly convinced. But no appellate court has a right to abdicate its own duty of determining every case upon its own view of the facts. Every party has an absolute statutory right of appeal; and it would be wrong and unjustifiable to give the form of a

remedy and yet hold that the decision below must govern the court of review.

In considering the grounds now laid before us, we have felt it proper to examine again into the record, as we feel no desire to take any step which we can fairly avoid which will lead to such serious consequences as the loss of professional standing.

It is one of the difficulties attending all tribunals passing upon facts, that the reasons for believing particular witnesses or particular testimony in preference to others cannot be defined.   Every tribunal passing on facts must act on the belief which the testimony creates.   That belief does not usually, as it certainly does not with us in this case, involve either the rejection or acceptance of all that is said by any particular witness.   In our previous decision we abstained from any elaborate discussion of the conflicting facts, and contented ourselves with the conclusions which had impressed us all.   We do not now intend to do much more; and we should have abstained entirely from any further statement, had it not been compelled by the peculiar nature of the new showing which we have no doubt rests on some misapprehension as to our former views.

A considerable and very respectable showing is presented in favor of the character of Mr. Minock, who, as notary public, took the acknowledgment of the deed which we held fraudulent.   The present showing seems to be based on the assumption that we could not have reached our conclusion without regarding him as involved in the fraud.

Upon this it is sufficient to say, that if he acted, as he claims to have acted, as a mere notary, having no special knowledge of the transaction in issue, it would have been very strange if his memory had retained a minute recollection of the surroundings; and his testimony, however honest, would deserve little consideration if opposed to the probabilities, and to facts about which there can be no great doubt.   It is a very common thing for an honest witness to confuse his recollection of what he actually observed with

what he has persuaded himself to have happened, from impressions and conclusions not really drawn from his own actual knowledge. Mr. Minock did not remember clearly what he did in regard to a separate acknowledgment, aside from his belief founded on his usual practice; and yet that was a fact concerning himself and about which he would have been likely to recall the truth, as he would as to things done by others. It would have been suspicious if he had paid extraordinary attention to a transaction which, if an honest one, would have presented no strange features; for very few notaries can be found who after so great a lapse of time could possibly recall the ordinary incidents of a conveyance. If he was unsuspicious, it would not be difficult for a shrewd person, intending a fraud, to handle papers in such a way as to escape detection.

We have not regarded any of the testimony of the parties concerning the manner of the fraud as necessarily correct, because they were equally unsuspicious. But they could not be ignorant concerning the central fact of a fraud committed by some means, and by some deception as to what was signed.

Affidavits of the bad character of Mrs. Bellair could not have been received to affect her credit if the affiants had been sworn upon the stand. If we regarded them as important, we should desire cross-examination, as well as some information concerning at least a part of these persons, before we should be justified in trusting to such an impeachment.

But the record shows that no attempt was made even by cross-examination to destroy the credit of the complainant and her husband as witnesses, and this was not accidental, but intentional. We are nevertheless satisfied that Mrs. Bellair,—as appears plainly from the record,—is not a person of unimpeachable character; and we have been mindful of this in scanning her story, which is in some respects, as we think, incorrect, but which in the one leading feature of the case we believe to be true.

The same circumstances which show her character show

that she had intimate and improper relations with Wool, and was much under his influence; and while her statements require scrutiny, they are no. more open to criticism on this account than Wool's, who was in the same moral complications, and equally interested in the result. An opening of the subject of her character would not have been one-sided.

Oliver Bellair has no interest whatever in the case; and while we are not impressed with the idea that his testimony should not be rigidly examined, he is nevertheless, so far as motives go, in a better position than any of the parties themselves.

The minor surroundings cannot be very decisive in determining the leading fact. Wool was charged with defrauding Mrs. Bellair by procuring a deed to himself and Prentis of an interest of Oliver Bellair, in future enjoyment, of a valuable estate in Detroit, when it was supposed the conveyance was made to Mrs. Bellair. The interest was one-eighth part of a tract devised by Bellair's mother. The complainant's claim was, that her husband, from whom she had separated, had agreed to convey it to her for a small sum, in view of her having custody of their child. Bellair swore to this positively, as did Mrs. Bellair, and their testimony was corroborated by disinterested evidence. The substitution, or some other deception, in passing the deed, is supposed to have taken place at Minock's office.

Wool in answering did not undertake to set out when or how he made any bargain for Bellair's interest for himself and Prentis, and gave no explanation of it. His testimony, which in the most·important portions was given under leading questions of his own counsel, is equally silent on this subject. The matter was one which was important, and which he was directly called on to explain; and he leaves it in obscurity, contenting himself with controverting complainant's testimony.

The production of the original deed, which was not before us on the first hearing, and which we had supposed might·have been incorrectly printed, presents some very pe-

culiar appearances, which we cannot account for on any theory of defendant's testimony. Mrs. Bellair's name is written over an erasure not explained by any one, and there are singularities about both signatures. But this we do not regard as in itself very important. It appears that instead of taking from Bellair a quit-claim or transfer of his interest in one-eighth of his mother's estate, this deed, if genuine, conveyed or purported to convey by full present warranty a legal title in fee simple to the whole estate, and not to the future enjoyment of an undivided eighth part of it. It is very certain Bellair never agreed to make any such conveyance to any one; and it is equally clear that he never could have signed such a deed without having been deceived as to its contents. If, as some of the witnesses indicate, he examined a deed at Minock's office, in such a way as to learn its contents, this could not have been the deed he examined. Neither Bellair nor his wife could possibly have supposed they were signing such a deed as the one before us, even if Wool had purchased the interest he claims. It is so manifest that this deed, on any possible theory, was a fraud, that the testimony upholding it is entitled to no credit; and the substitution of such a document for something else can hardly be doubted. It is not even pretended that any bargain was ever made for such a conveyance, and the fraud is palpable. It is not made much worse, if at all, by the theory of the complainant's bill.

We need not repeat the further reasons which have convinced us that the case was made out by the proofs. The law does not deny its protection against frauds to all but the virtuous, although it may require strong proof that they have been defrauded. We think the present case is fully proved.

An order must be made removing respondent from his office of attorney.

The other Justices concurred.