PEOPLE EX REL. SKELTON, ETC., v. BROWN.

1. COURT RECORDS AND FILES TO BE PROTECTED.—It is the manifest duty of every court to protect its own records and files from unnecessary pollution.

2. ATTORNEYS—DUTIES AND PRIVILEGES.—A regularly licensed attorney must be held to know better than to inject into a legal argument irrelevant and scandalous denunciations of his opponent; a legal argument may consist of an appeal to reason or authority; and the advocate, either orally or in writing, may freely exercise his talents, and employ all the resources of his learning and logic which the scope of the questions afford; but he is not at liberty to go outside the record for purposes of scandal and abuse.

3. UNPROFESSIONAL CONDUCT—MALCONDUCT.—Where an attorney incorporated into a printed argument filed in this court upon demurrer scandalous and abusive language against his opponent not pertinent to the argument; held, that his conduct was grossly unprofessional, for which he might be punished as for contempt or malconduct in office.

*Original Proceeding.*

Messrs. PENCE & PENCE and Mr. W. T. SKELTON, for petitioner.

Mr. QUITMAN BROWN, *pro se.*, and Messrs. SULLIVAN & MAY, for respondent.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The petition was presented by Hon. William T. Skelton, county judge of Washington county, Colorado, asking that

the name of Quitman Brown, Esq., of Yuma county, Colorado, a duly licensed attorney of this court, be stricken from the roll of attorneys for malconduct in office as such attorney. The petition states that the respondent Brown had, in connection with certain litigation then and theretofore pending, falsely, maliciously and publicly charged petitioner with the offense of falsifying the records of the county court of Washington county, and with acting corruptly, oppressively and in willful disregard of his duty as a judge, etc. The petition sets out the charges against respondent at great length, and with great particularity as to time, place and circumstances, and charges that the conduct of respondent in the premises was malicious, without any cause or excuse, and with intent to bring petitioner as a judge of said court and the court itself into contumely and disgrace, etc.

The respondent having been served with a rule to show cause why the prayer of the petition should not be granted, filed in this court a demurrer to the petition, accompanied by a lengthy printed brief and argument in support thereof. The brief contained the citation of numerous authorities; and if respondent had kept within the reasonable limits of legitimate argument, the brief would have been entitled to consideration upon its merits. But respondent, taking advantage of his supposed privilege as an attorney or respondent *pro se*, incorporated into his argument a scandalous attack upon the character of petitioner, going entirely outside the limits of the record in so doing. The following passage illustrates better than we can describe the character of the document:

" A constitutional qualification is that judges of the supreme and district courts must be learned in the law. But no such qualification is prescribed anywhere for justices of the peace and county judges. They are the American courts of *Piepoudre* and have been cursed by lawyers and charged with corruption ' from time whereof the memory of man runneth not to the contrary,' and hitherto, this customary in-

dulgence has not been deemed a breach of professional etiquette."

Other passages of the brief and argument were more personal and scandalous than the foregoing; running through several pages, respondent charged relator with corruption as a judge in the most unqualified terms, and in intemperate and disgusting language imputed to him dishonest and unworthy motives. The demurrer was overruled, and respondent was permitted to answer over. Upon further consideration a supplemental rule was also entered requiring respondent to show cause, if any he had, why he should not be dealt with for malconduct in office as an attorney for the impertinent and scandalous language used in said argument in this court.

Respondent answering to the original and supplemental rule denied any purpose to abuse his office or privilege as an attorney, disclaimed any intentional disrespect to this court, and pleaded the infirmity of human nature as an excuse for the severity of his language, considering the great wrong under which he felt himself suffering when preparing his argument.

Referees were appointed to take the testimony, one resident in Denver, the other in Yuma county. The relator took certain testimony before the Denver referee which was duly reported. Respondent admits that he had due notice of the taking of the testimony in Denver; and, also, that he was notified that relator would take no testimony in chief before the Yuma referee; nevertheless respondent has not produced any evidence in his own behalf. In lieu of evidence he has filed a motion asking the court to vacate all rules against him and to dismiss this proceeding; and in support of this motion has filed a lengthy *ex parte* affidavit, in the course of which he says:

" That he is anxious that some decision should be reached in the present case, and that rather than delay this matter by asking further time in which to take testimony in his behalf, he will be content to submit the case upon this affidavit and

all the other testimony, and the papers attached to this affidavit."

In his affidavit respondent also expresses the wish that the feeling manifest in his brief and argument upon demurrer "could be eliminated;" states that his feeling when the brief was written "may explain the appearance of objectionable matter in that document;" and further explains that all he meant by charging Judge Skelton with corruption was, that he thought Skelton guilty of "intentional partiality" or "judicial unfairness," and not that any one had "bribed" him.

From the report of the referee it appears that several prominent citizens well acquainted in Washington and Yuma counties testified to good character and reputation of Judge Skelton. Respondent might have cross-examined these witnesses; he might, also, have introduced testimony, if he had any, tending to mitigate, even though he could not justify, his own language or conduct. But respondent's *ex parte* affidavit cannot be accepted as competent evidence for any purpose. If he had desired to testify in his own behalf he could have done so, upon notice to the opposite party, before one of the referees, thus giving opportunity for cross-examination. As the case stands, Judge Skelton must be considered as fully exonerated from the charges made against him by respondent.

With the foregoing observations and without undertaking to determine specifically whether the matters set forth in the original petition were of such character that this court should in its discretion have taken cognizance of them, we pass to the consideration of respondent's conduct in filing the objectionable brief and argument in this court. It is the manifest duty of every court to protect its own records and files from pollution. In general, where papers are filed in a cause, it is not difficult to distinguish that which is germane and pertinent to the litigation from that which is foreign, impertinent, and introduced solely for the purpose of scandal and

abuse.   *People v. Green,* 9 Colo. 506; *People ex rel. v. Berry,* 17 Colo. 322; *The Diamond Tunnel Co. v. Faulkner,* 17 Colo. 9.

That the language used by respondent in his printed argument filed in this court was grossly unprofessional, admits of no controversy. In placing such a document upon the files of this court respondent was not only guilty of contempt, but of malconduct in his office as an attorney. The fact that he himself was a party to the proceeding did not relieve him from responsibility as an attorney when acting as his own counsel. When this court grants a license to a person to practice law, the public and every individual coming in contact with the licensee in his professional capacity has a right to expect that he will demean himself with scrupulous propriety as one comissioned to a high and honorable office. A person enjoying the rights and privileges of an attorney and counselor at law must also respect the duties and obligations of the position.

The objectionable language used by respondent was prepared and printed; the heat of oral debate cannot be pleaded in extenuation. The language was used in argument upon demurrer; no facts could be properly drawn in question upon such an argument. A demurrer, as is well known to the legal profession, admits the truth of all matters properly alleged in the pleading demurred to, and presents for consideration the questions of law applicable to such admitted facts and none others. An argument upon demurrer must necessarily be confined to a discussion of the legal questions thus presented. The argument may consist of an appeal to reason or authority; and the advocate, either orally or in writing, may freely exercise his talents, and employ all the resources of his learning and logic which the scope of the questions afford; but he is not at liberty to go beyond the limits of the record for any purpose, much less for the purpose of scandalizing his opponent.

Respondent, from the form and substance of his demurrer and certain portions of his argument, was evidently familiar with these elementary principles; and, yet, in other portions

of his argument he deliberately and boldly assumed that all his accusations against petitioner were true, whereas the demurrer admitted that they were malicious and false as charged in the petition. The argument was a great aggravation of the original offense. Regularly licensed attorneys must be held to know better than to inject into a legal argument irrelevant and scandalous denunciations of their opponents as to matters of fact; and even on the final hearing some degree of moderation is generally considered prudent and commendable.

We are not prepared to indorse the statement that it is an immemorial custom for reputable lawyers to curse and charge with corruption any class of judicial officers in this country; much less can we sanction the idea that such conduct is not a breach of professional etiquette. Nothing submitted in this proceeding justifies respondent's conduct in placing upon the files of this court such an offensive document as his so-called argument upon demurrer. The most charitably inclined cannot reasonably ascribe language thus deliberately written, printed, and filed to the infirmity of human nature, nor pardon it to the heat of debate when thus made use of by a lawyer of mature years and experience.

Respondent's *ex parte* affidavit upon which he submits this case, is only partially apologetic; it is not adequate to the offense; nor are his explanations altogether satisfactory. In view of all the circumstances, however, the judgment of this court will be that respondent be suspended from practice as an attorney and counselor at law for the period of six months from this date, and until the payment of all the costs of this proceeding.