**UNITED STATES ex rel. FITZGERALD, Asst. U. S. Atty. v. STUMP.**

No. 6802.

District Court, Alaska, First Division, Juneau.

May 28, 1953.

P. J. Gilmore, Jr., U. S. Atty., Juneau, Alaska, and James M. Fitzgerald, Asst. U. S. Atty., Ketchikan, Alaska, for plaintiff.

M. E. Monagle, Juneau, Alaska, W. C. Stump, Juneau, Alaska, in pro. per., for defendant.

FOLTA, District Judge.

The question presented by this proceeding for the disbarment of the defendant is whether a threat by an attorney to cause pecuniary loss to a legislator because of his vote on a certain bill is misconduct which tends to bring reproach upon the profession or injure it in the favorable opinion of the public.

The legislator, William K. Boardman, is engaged in the insurance business in Ketchikan, where the defendant also practices law. The complaint alleges that upon learning of Boardman's vote on a bill to abolish the Alaska Development Board, the defendant proceeded to Juneau and, pursuant to his previous declaration to one Milligan, upbraided Boardman for his vote and threatened to procure the cancellation of all policies of insurance issued by Boardman to clients of the defendant and to ruin him in his business. It would thus appear that the threat was made not upon impulse or in a moment of anger, but upon some deliberation and reflection. The defendant's version of these conversations is that he merely told Boardman that he would cancel his own policy and discontinue business relations with him and added that, so far as he, the defendant, was concerned, he "was through in Ketchikan". Since it was not shown that either Milligan or Boardman had any motive for testifying as they did, which incidentally cannot be said of the defendant, I am compelled to accept their version of what took place.

The defendant argues, however, that not only did the acts complained of fail to influence Boardman's future legislative conduct, but that on the contrary, Boardman retaliated by complaining to the U. S. Attorney. But this argument overlooks the fact that success is never a prerequisite, nor is it the criterion that should be applied, to any proceeding, particularly one of this nature. Bedell v. United States, 8 Cir., 78 F.2d 358, 369; Catrino v. United States, 176 F.2d 884, 886, and cases there cited. It is the natural tendency of such acts which is the test. It would be vain to say that threats of this kind would have

no tendency to influence the future official conduct or independence of the one against whom they are directed. As a means of coercion, a threat is closely akin to bribery, for it is the means ultimately resorted to where an appeal to cupidity fails, and therefore differs from bribery only in that it is more culpable.

Among other obligations assumed by a legislator is that of representing the public interest. To protect him in the execution of his trust, he is given immunity from arrest as well as from liability for his utterances; and those seeking to influence his legislative acts are required to register and disclose the identity of those whom they represent. An attempt to influence his official acts by threat of economic loss or ruin is the antithesis of the constitutional right to petition the legislature. As was said by the Supreme Court in Marshall v. Baltimore & O. R. R. Co., 16 How. 314, 57 U.S. 314, 334, 14 L.Ed. 953, "any attempt to deceive persons intrusted with high functions of legislation, by secret combinations, or to create or bring into operation undue influences of any kind, have all the injurious effects of a direct fraud on the public".

The case of Bartos v. United States, 8 Cir., 19 F.2d 722, upon which the defendant relies, concerns strictly private individual behavior, not involving a third person or affecting the public interest, and hence is hardly authority for the proposition that the acts of the defendant may not be made the subject of disciplinary action.

Disbarment is not punitive but is resorted to for the purpose of protecting the public and the profession from members of the bar who descend from the high standards prescribed for the practice of the profession. When a member of the bar abuses the power and influence which come with admission and acts in a manner inimical to the public interest, his conduct brings reproach upon the profession and casts doubt upon his fitness as an officer of the court. Even in the absence of factual precedent, therefore, I experience no hesitancy in reaching the conclusion that, viewed in the light of statutory provisions, the code of ethics or the standards erected by the Courts in the exercise of their inherent power to regulate the conduct of their officers, the acts of the defendant were such as manifestly tend to bring reproach upon the profession and injure it in the favorable opinion of the public. The general public already has a rather low opinion of the legal profession, due in part at least, to its reluctance or failure to do much more than pay lip service to high-sounding ideals.

An order suspending the defendant from engaging in the practice of law for 60 days from its entry, may be presented.