[No. 6475]

THE PEOPLE EX REL THE COLORADO BAR ASSOCIATION *v.* PATTERSON.

ATTORNEY—*Misconduct*—An attorney shown to have extorted money from a client by false misrepresentations, disbarred.

In such case it was immaterial that the matter in respect to which the representations were made was pending in the land office of the United States.

An attorney is held to the rule of honorable conduct even in matters having no relation to the practice of his profession.

The request of the complaining party that the proceeding might be discontinued, "inasmuch as his differences with the attorney had been composed" was disregarded.

*Original Proceeding.*

Mr. S. C. WARNER, for petitioner.

Mr. QUITMAN BROWN, for respondent.

*Per Curiam.*

The respondent is charged with unprofessional conduct as a lawyer licensed to practice in this state. The substance of the information is that the respondent, James R. Patterson, is a resident of the town of Sterling, Colorado, and at the time was engaged in the practice of law at that place; that one Octave Gervais engaged him to conduct a contest before the United States Land Office at Sterling, involving a homestead entry by Cora Mc-Combs; the fee for such services was to be $25.00.

Gervais resided at Denver and returned to that city after filing his contest at the Sterling Land Office on the 23d day of May, 1907. On the 30th day of June, Patterson wrote his client at Denver as follows:

"I served the notices on the lady who formerly owned the 40 acres that you contested. The day before I was up to see her she was offered $400.00 for the land. She went to relinquish and found that you had a contest on it. She was awful mad. I tried to get her to let us have a relinquishment but she would not listen to that at all at first. At last she said that if you would give her $50.00 she would relinquish and if not she would fight you to a finish. I believe that it will be best to buy her off as she can make a lot of expense for us as well as a lot of trouble. What do you think?
Let me hear from you by return mail.
                                    Yours truly,
                                    Jas. R. Patterson.

The land is under both reservoir and ditch. It is fine. I was out and looked it over myself."

In response to this letter Gervais wrote Patterson making some inquiry as to why McCombs should reduce

the price from $400.00 to $50.00, and on July 6, 1907, the respondent Patterson wrote Gervais as follows:

"Sterling Colo., July 6, 1907.

Mr. Octave Gervais,
    Denver, Colo.
Dear Sir:—Your letter received and I will now answer. The reason that she dropped from $400.00 to $50.00 is that she can't sell for any price. If she could she would. She could get it without any trouble. The land lies in the Springdale valley and is the best of land. The $50.00 includes all her improvements. You will make a mistake if you give this up for a dry farm. This can all be irrigated from the new irrigation reservoir's ditch. You stay right by this. It is a good piece of land.
                Yours truly,
                        Jas. R. Patterson."

Later, Patterson came to Denver and received from Gervais $50.00. The receipt for this money is in language as follows:

"Denver, Colo. July 15, 1907.
    Received of Octave Gervais, Fifty and no/100 Dollars, with which to purchase Cora C. Hudspeth's relinquishment.
$50.00.                        Jas. R. Patterson."

The facts were that Patterson made an arrangement with the entryman, McCombs, nee Hudspeth, to purchase the relinquishment for $15.00 and he and Hudspeth were to divide that amount between them, which was done. There was no basis for his statement that the relinquishment would cost fifty dollars. The testimony shows there were no improvements on the land and his own testimony shows that the entryman was not offered $400.00 the day before he wrote the letter, nor any other sum.

While the testimony is somewhat conflicting in certain particulars, it is undisputed that Patterson received the $50.00 from his client for the sole purpose of purchasing the relinquishment, and by representing that this would cost that sum. Such representation appears to have been absolutely untrue, and after paying the entryman the agreed sum of seven dollars and fifty cents for her relinquishment, he retained forty-two dollars and fifty cents for his own, and thus by means of the false representations in his letters and verbally, he defrauded his client of that amount.

This conduct of Patterson is inexcusable. The brief of respondent is devoted solely to his challenge to the jurisdiction of this court, it being alleged that the legal services of Patterson were to be performed before the department of the interior, and not before the courts, and for such reason his fault, if any, is a matter for the consideration of the department of the interior alone, and not for the supreme court.

It is sufficient answer to this to say that the department of the interior admits practicing lawyers to practice before that department upon the faith of their licenses to practice law in the state courts, without any examination or regulation by the department. It is true that such department admits to practice persons other than practicing lawyers, but this is upon its own investigation and regulation. But it is the duty of a lawyer practicing at the bar of the state, to transact whatever business he may attend to in a reputable and honorable manner, and he is held to the rule of honorable conduct as a citizen, whether that conduct relates to the practice of the profession or not.

The conduct of the respondent in this case constituted obtaining money from his client under false pretenses, and was therefore dishonorable.

It was said by this court in the case of the *People v. Sindlinger*, 28 Colo. 258, 64 Pac. 191, as follows:

"Under the laws of this state, and the rules of this court, applicants for admission to the bar must be persons of good moral character. If subsequent to admission an attorney is guilty of such conduct that he no longer possesses this qualification, his name should be stricken from the rolls. The relation of attorneys to their clients and the courts demands that they be persons of integrity. If in business transactions they are guilty of fraud involving moral turpitude, they are not persons of good moral character. The conduct of respondent has not only been unprofessional, but dishonest. He has been guilty of obtaining money under false pretenses, has taken advantage of those who employed him in his professional capacity, to defraud them of money which came into his hands by virtue of such employment, and has made misrepresentations to a client for the purpose of inducing him to advance money which he has appropriated to his own use. Such conduct is reprehensible in any person, and especially so with respect to one who invites the confidence of the public, and those who employ him professionally, by reason of the fact that he holds a certificate which, under the laws of this state, authorizes him to practice as an attorney at law."

The conduct of Gervais in this proceeding is as objectionable as that of the respondent, for when he made demand on the latter for recompense, he insisted on the payment of seventy-five dollars, when but forty-two dollars and fifty cents was his due. So that this proceeding was instituted by Gervais with that purpose in view, though he later accepted the correct amount. It is clear that his purpose was to use this proceeding to collect his debt, rather than to bring the wrongdoer to punishment. This becomes apparent from his letter to the grievance

committee of the bar association, wherein he says that in as much as his differences with Patterson were arranged he asks a withdrawal of the proceeding.

The rule on the respondent heretofore issued, requiring him to show cause why he should not be disbarred, is made absolute, and it is ordered that his name be stricken from the roll containing names of attorneys authorized to practice law in this state.

*En banc.*

HILL, J., not participating.

*Per Curiam.*